IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHASTA N. F.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 3:18-cv-00463-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Shasta F. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1992, plaintiff alleges disability beginning October 1, 1995, due to seizures, learning disabilities, attention deficit disorder, and foot problems. Tr. 167, 182. On May 30, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE") and medical expert ("ME"). Tr. 31-61. On July 5, 2017, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the January 27, 2015, application date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "depressive disorder not otherwise specified; learning disorders of written expression, reading and math; and anxiety disorder not otherwise specified." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels but with the following non-exertional limitations: "[She] can understand, remember, and apply information to complete tasks that require a GED reasoning level of 2 or less that do not require reading, writing, or math above a fifth grade level in a setting with no public contact, no teamwork assignments, and no exposure to hazards." Tr. 17.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 22. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite her impairments, such as motel cleaner, price marker, and laundry folder. Tr. 22-23.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the medical opinions of Wayne Taubenfeld, Ph.D., and Dorothy Anderson, Ph.D.; and (3) failing to account for all her limitations in the RFC, thereby rendering an invalid step five finding.

### I.     Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting her subjective symptom testimony concerning the severity of her mental impairments.[2] Pl.'s Opening Br. 10-13 (doc. 16). When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did

---

[2] The only specific testimony that plaintiff challenges relates to her mental impairments. Pl.'s Opening Br. 10-13 (doc. 16). Regardless, the Court's analysis applies equally to plaintiff's testimony concerning her physical impairments.

not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work because "I can't remember a lot of things and I can't be on my feet to long." Tr. 49. She also testified that her learning disability made reading and math "more difficult." Id. When asked what type of things she was unable to remember, plaintiff responded: "Certain words, how to spell them" and "the names of common items." Id. In regard to the latter, plaintiff explained "everything blacks out sometimes . . . I don't remember what happened 20 minutes earlier." Tr. 49-50, 53. She testified to experiencing five such episodes in approximately the last six months. Tr. 31, 53. Plaintiff linked her recall problems and headaches to an October 2015 car accident; the headaches began immediately but the memory problems did not emerge until more than one year later. Tr. 51-54. When her headaches are severe, plaintiff stated she is unable to concentrate and needs assistance with her two young children[3] from her live-in brother-in-law or husband. Tr. 54-55.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but

---

[3] Plaintiff's children were six years old and eleven months old at the time of the hearing; plaintiff was also approximately three months pregnant with her third child. Tr. 46, 48, 52, 412.

Page 4 – OPINION AND ORDER

her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18-20. Specifically, the ALJ found that plaintiff's daily activities and failure to seek treatment or report symptoms, as well as the lack of corroborating medical evidence, undermined her subjective symptom statements. Id.

Notably, the ALJ found that plaintiff's "actual functioning is not consistent with her reported limitations." Tr. 19. An ALJ may discredit a claimant's testimony when he or she reports activities that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

Substantial evidence supports the ALJ's finding in the case at bar. The record demonstrates plaintiff is the primary care-giver to her two young children. Tr. 46. Plaintiff testified that she is able to care for them "safely" and "respond appropriately if there's an emergency." Tr. 47. Plaintiff also testified that she possessed adequate recall to operate appliances, cook meals, and dress and bathe herself and her children. Tr. 49. Moreover, the record reflects that plaintiff graduated from high school with a regular diploma, attended beauty school for two years,[4] scheduled and transported her children to school and medical appointments, took public transportation, attended parent/teacher conferences, performed limited household chores, prepared meals from memory, and went grocery shopping, during which she was able to determine whether she received correct change. Tr. 19, 46-49, 194-97, 238, 262, 267. Based on these activities, it was reasonable for the ALJ to infer that plaintiff retained the cognitive ability to perform work consistent with the RFC.

---

[4] The record reflects plaintiff stopped attending beauty school for reasons unrelated to her mental impairments. Tr. 262, 267.

Page 5 – OPINION AND ORDER

In addition, the ALJ determined plaintiff's "statements at the hearing are not entirely consistent with the medical evidence." Tr. 20. Namely, the ALJ cited to "the lack of treatment and minimal objective findings" in resolving that the medical record belied plaintiff's subjective symptom reports. Tr. 19-20. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration. Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). Similarly, the failure to seek medical treatment, or report allegedly disabling symptoms to treatment providers, is a valid reason to discount a claimant's self-reports. Greger v. Barnhart, 464 F3d 968, 972-73 (9th Cir. 2006).

As the ALJ pointed out, there is no evidence of any mental health treatment in the 400-plus page record. Tr. 18-19. Likewise, plaintiff was not taking any medications prior to her current pregnancy other than for nausea. Tr. 52. Despite seeking regular medical care, plaintiff never complained of any problems with memory or blackouts. Tr. 57-65, 296-418. Further, after October 2015, when plaintiff was involved in a motor vehicle accident, there is only a single report of headaches and dizziness. Tr. 310-20, 405-19. To the extent they exist, plaintiff's psychiatric and mental status exams are unremarkable. Tr. 18-19, 257-65, 296-418. Finally, plaintiff's testimony regarding her math and recall abilities is at odds with Dr. Taubenfeld's findings.[5] Tr. 49-50, 55, 272, 274.

---

[5] Plaintiff argues that, because the ALJ referenced the RFC in discussing the medical evidence, the ALJ "put the cart before the horse" and therefore failed to properly account for her subjective symptom testimony. Pl.'s Opening Br. 12 (doc. 16) (citations and internal quotations and brackets omitted). Plaintiff is correct that an ALJ may not discredit a claimant's testimony solely as being inconsistent with the RFC; however, simply including such boilerplate language is not erroneous provided an ALJ's treatment of the claimant's self-reports contains specific findings. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102-03 (9th Cir. 2014). As addressed above, the ALJ in this case set forth legally sufficient reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements.

Page 6 – OPINION AND ORDER

Therefore, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of her impairments. The ALJ's evaluation of plaintiff's testimony is affirmed.

## II. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the social limitations assessed by Drs. Taubenfeld and Anderson. Pl.'s Opening Br. 6-9 (doc. 16). The ALJ is responsible for resolving ambiguities in the record and translating the claimant's impairments into concrete functional limitations. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008); see also Davis v. Astrue, 2012 WL 4005553, *9 (D. Or. June 12, 2012), adopted by 2012 WL 3614310 (D. Or. Aug. 21, 2012) ("it is the responsibility of the ALJ, not the claimant's physician, to determine [the RFC] and the ALJ's findings of RFC need not correspond precisely to any physician's findings") (citations and internal quotations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

The record before the Court contains four medical opinions: one examining doctor (Dr. Taubenfeld), two state-agency reviewing doctors (Dr. Anderson and Ben Kessler, Psy.D.), and one ME (David Glassmire, Ph.D.). On April 16, 2015, Dr. Kessler reviewed the available medical evidence and opined that plaintiff was capable of performing "simple, repetitive tasks on [a] regular and consistent basis without needing special supervision or support." Tr. 68.

On April 20, 2015, Dr. Taubenfeld conducted a "Learning Disorder and Neuropsychological Assessment" on plaintiff, which involved a clinical interview and several objective tests. Tr. 266-82. The latter revealed that plaintiff's full-scale IQ was in the low-average

range, with reading and math/written skills in the borderline and extremely low range, respectively. Tr. 270, 272-73. Dr. Taubenfeld's testing also evinced "mild impairment in attention/concentration" and low-average memory skills that exceeded plaintiff's general intelligent scores, meaning that "memory is an area of strength." Tr. 274, 276-77. Although plaintiff did not meet the criteria for any personality disorder, her scores indicated the low-grade presence of dependent, narcissistic, and compulsive traits. Tr. 277-78. Her depression and anxiety inventories revealed "no levels of depression" and "mild levels of anxiety." Tr. 278.

Dr. Taubenfeld diagnosed plaintiff with depression, panic disorder, anxiety disorder, obsessive-compulsive disorder, posttraumatic stress disorder (in remission), attention deficit disorder, and learnings disorders in written expression and math. Tr. 280. In the "Social Summary Section," Dr. Taubenfeld provided generalized information about what symptoms people with dependent, narcissistic, or compulsive traits might experience. See Tr. 279 ("[t]hese types of persons have difficulty making decisions and second-guessing [sic] nearly everything they do"). Under a section entitled "Recommendations," Dr. Taubenfeld suggested that plaintiff be referred to counseling and consult with her DHS case manager, and "would benefit from direct instruction/practice on interacting with co-workers [and] working effectively with supervisors." Tr. 281. The doctor then went on to list a number of "Accommodations" related to DHS programs and work-site training.[6] Tr. 281-82.

On May 26, 2015, Dr. Anderson reviewed the medical record and agreed with Dr. Kessler that plaintiff was "[a]ble to perform simple, repetitive tasks on [a] regular and consistent basis

---

[6] Plaintiff does not challenge the ALJ's treatment of Dr. Taubenfeld's report except in regard to the supervisor/coworker recommendation and his comments in the "Social Summary Section." Pl.'s Opening Br. 6-10 (doc. 16); Pl.'s Reply Br. 1-4 (doc. 18); see also Padgett v. Wright, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam) (court need only consider arguments specifically and distinctly raised and argued in the opening brief).

Page 8 – OPINION AND ORDER

without needing special supervision or support." Tr. 79. She also endorsed no social limitations, except in regard to the general public, and expressly stated that plaintiff was "[n]ot significantly limited" in her ability to "accept instructions and respond appropriately to criticism from supervisors." Tr. 80. Nevertheless, in translating plaintiff's moderate social limitation in regard to the general public, Dr. Anderson wrote: "[plaintiff] is capable of having occ[asional] contact with the general public and frequent contact with coworkers and supervisors." Id.

Dr. Glassmire testified at the May 30, 2017, hearing. Tr. 35-45. He diagnosed plaintiff with unspecified depressive and anxiety disorders, and "a learning disorder of reading with language and mathematics." Tr. 37. In terms of functional abilities, Dr. Glassmire opined that plaintiff was capable of performing "simple, routine tasks,[7] no interaction with the public, only occasional tasks requiring teamwork, and no reading, writing, or mathematics beyond the fifth grade level." Id. He explained that his opinion was largely based on Dr. Taubenfeld's findings (as opposed to his conclusions), but also took into consideration the other medical evidence of record. Tr. 39-41, 43.

When asked by counsel about Dr. Taubenfeld's description of persons with dependent, narcissistic, or compulsive traits, Dr. Glassmire responded: "I didn't really see evidence that [plaintiff] needed any specific accommodations . . . [she] is simply reporting some traits [but] that's not to the level of a diagnosable personality disorder that would have a functional impairment." Tr. 42. When questioned by counsel whether he agreed with Dr. Taubenfeld's other recommendations and accommodations, Dr. Glassmire remarked that "[s]ome are actually more restrictive than necessary, so, for example, it was noted that [plaintiff] should have direct instruction or practice, interacting with coworkers and supervisors [but] I don't see a need for that

---

[7] In response to the ALJ's follow-up inquiry, Dr. Glassmire confirmed that plaintiff was capable of work consistent with a GED reasoning level of 2. Tr. 38-39; see also Mercedes A. v. Comm'r Soc. Sec., 2019 WL 1472105, *7 (D. Or. Apr. 3, 2019) (defining level 2 GED reasoning).

Page 9 – OPINION AND ORDER

. . . standard, what any employee might get, [would be sufficient]." Tr. 41-42. He also noted that the concrete functional limitations he identified obviated the need for many of Dr. Taubenfeld's accommodations. Tr. 42. In concluding his testimony, Dr. Glassmire commented, "I don't think there are a lot of differences" between his opinion and Dr. Taubenfeld's. Tr. 43-44.

The ALJ summarized and weighed each medical opinion in turn. Tr. 20-22. In regard to the state agency consulting sources, she assigned them "great weight" because they were consistent with plaintiff's activities and failure to seek treatment, and the overall medical record. Tr. 21.

Concerning Dr. Taubenfeld, the ALJ stated his "objective testing . . . supports cognitive limitations" but noted plaintiff's "actual functioning [is] inconsistent with the severity of some of [his] limitations." Tr. 20. Specifically, the ALJ found that plaintiff's ability to "sufficiently follow directions to manage her children's appointments and follow packaging directions for food . . . supports finding [that plaintiff] would not necessarily need further accommodations [in regard to supervisors] if the work was within the above [RFC]." Id. Accordingly, the ALJ afforded Dr. Taubenfeld's opinion "some weight." Id.

The ALJ gave Dr. Glassmire's opinion "significant weight." Tr. 22. The ALJ resolved that Dr. Glassmire's opinion was the most persuasive because he had the benefit of "review[ing] the entirety of the medical record" and his "explanation . . . provides a strong basis for his opinion." Tr. 21-22. The ALJ observed further that, "[a]lthough [Dr. Glassmire] disagreed with some of Dr. Taubenfeld's recommendations, overall his assessment is not inconsistent with Dr. Taubenfeld's," which "was the only comprehensive evaluation of record." Tr. 21.

Thus, in formulating the RFC, the ALJ individually evaluated each medical opinion and assigned a particular weight thereto accompanied by a statement of reasons. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ adequately discredits a medical opinion by "setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (citation omitted). Essentially, the ALJ concluded that plaintiff's medically determinable mental impairments did not result in concrete work-related restrictions beyond those identified by Dr. Glassmire.[8]

Although Dr. Taubenfeld recommended training in regard to supervisors and coworkers, plaintiff indicated in her April 2015 Adult Function Report that she handled authority figures, including bosses, "very well," and had no problems "getting along with family, friends, neighbors, or others." Tr. 197-200. This is consistent with the medical and other evidence. As the ALJ denoted, plaintiff interacted with and followed the instructions of myriad medical providers, and she did not report any social issues relating to her limited academic history or volunteer experiences. Tr. 20, 257-65, 296-418. Indeed, even Dr. Taubenfeld observed plaintiff's "conversational proficiency seemed advanced for her age level," and that she "was exceptionally cooperative throughout the examination" and "seemed attentive to tasks." Tr. 268.

---

[8] It is well-established that an ALJ need not account for a doctor's mere recommendations or suggestions. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 691-92 (9th Cir. 2009) (ALJ did not err by failing to incorporate into RFC doctor's statement that appeared in section of report entitled "Recommendations" and was neither a diagnosis nor statement of claimant's functional capacity); Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) (ALJ did not err where doctor's "proposal was offered as a recommendation, not an imperative") (emphasis removed). As a result, Dr. Taubenfeld's generalized statements about the "types of persons" that have dependent, obsessive-compulsive, or narcissistic symptoms, as well has his recommendation that plaintiff "would benefit from direct instruction/practice" regarding coworkers and supervisors, do not represent work-related limitations of function that need be reflected in the RFC. See Boyer v. Colvin, 2013 WL 3333060, *7-8 (D. Or. July 1, 2013) (affirming the ALJ's decision under analogous circumstances). In other words, the fact that additional training in relation to coworkers and supervisor interactions may be advantageous to plaintiff does not affect her ability to perform work-related physical and mental activities on a sustained basis. Nevertheless, the Court notes that the ALJ explicitly addressed Dr. Taubenfeld's supervisor recommendation and, as addressed herein, provided legally sufficient reasons, supported by substantial evidence, for discrediting that portion of his opinion.

Page 11 – OPINION AND ORDER

Finally, to the extent plaintiff asserts the ALJ formulated an RFC contrary to Dr. Anderson's opinion, her argument is unpersuasive. Dr. Anderson identified no social impairment, except in regard to the general public. Tr. 80. Although she did go on to state that plaintiff "is capable of having occ[asional] contact with the general public and <u>frequent</u> contact with coworkers and supervisors," the RFC limits plaintiff, in relevant part, to no public contact or teamwork assignments. Tr. 17, 80 (emphasis added). Even accepting plaintiff's contention that the RFC is insufficient to account for Dr. Anderson's assessed restrictions, the representative occupations identified by the VE all involve no more than "frequent supervisor and coworker contact." Tr. 22-23, 56-60; DOT § 323.687-014, available at 1991 WL 672783; DOT § 209.587-034, available at 1991 WL 671802; DOT § 369.687-018, available at 1991 WL 673072. As such, any purported error in regard to Dr. Anderson's opinion is harmless. Stubbs-Danielson, 539 F.3d at 1174-75.

In sum, the ALJ reasonably determined that the medical record was consistent with work involving a GED reasoning level of 2 or less, no public contact, no teamwork assignments, no hazards, and no reading, writing, or math above a fifth grade level. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (even "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion"). The ALJ's assessment of the medical opinion evidence is affirmed.

## III.    RFC and Step Five Finding

Plaintiff argues the ALJ's RFC and step five finding are erroneous because they do not adequately account for the limitations described in her testimony, as well as the medical opinions of Drs. Taubenfeld and Anderson. Pl.'s Opening Br. 5-6, 13 (doc. 16). The RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not

severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As explained above, the ALJ appropriately weighed plaintiff's testimony and the medical evidence from Drs. Taubenfeld and Anderson. In any event, because the representative occupations identified by the VE required no more than frequent interaction with supervisors and coworkers, any error in regard to Dr. Anderson's opinion was harmless. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss, 427 F.3d at 1217-18.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of May, 2019.

                                 /s/ Jolie A. Russo
                                     Jolie A. Russo
                              United States Magistrate Judge